**Billy Charles MAYFIELD, Appellant,**

**v.**

**Romana A'nette SMITH et vir, Appellees.**

**No. 1373.**

Court of Civil Appeals of Texas, Tyler.

Oct. 30, 1980.

Rehearing Denied Dec. 11, 1980.

■■■■■■■■■■■■■■■■

Gerry MacCamy, East Texas Legal Service, Inc., Beverly Bass, Longview, for appellant.

James T. Foley, James R. Pierce, Tyler, for appellees.

McKAY, Justice.

This is a suit to terminate the parental rights of the natural father of two children whose ages were six years and five years at the time of trial.

The petition of the natural mother and her husband to terminate the parental rights of the father, appellant Billy Charles Mayfield, alleged that termination was in the best interest of the children; that appellant engaged in conduct, or knowingly placed the children with persons who engaged in conduct, which endangered the physical or emotional well–being of the children, and that he failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of this petition. It was also alleged that it would be in the best interest of the children that the children be adopted by their stepfather, Johnny Smith, and that their names be changed to Smith. Appellant filed a general denial.

Trial was to the court, and judgment was rendered terminating the parent–child relationship between appellant and the children, and decreed that adoption of the children by Johnny Smith was granted and their names changed to Smith.

The trial court made and filed findings of fact that (1) Billy Charles Mayfield and Ramona A'nette Smith were married January 15, 1972, and two children were born to them; (2) that the parents were divorced on September 15, 1975, the mother being appointed managing conservator and the father possessory conservator, and the father was ordered to pay $80 per month for child support, with $40 to be paid on the first and fifteenth of each month until the youngest child reaches 18 years of age; (3) the clerk's records showed that the appellant paid the first payment of $70 on September 28, 1978, and payments since that date had been made on time but short some months and never any amount on the arrears; (4) petition for termination and adoption was filed on August 21, 1978, because appellant had failed to support the children in accordance with his ability during a period of one year beginning March 15, 1977, and ending March 15, 1978; (5) appellant's testimony and answers to interrogatories show that he received a five–year probated sentence for assault with intent to rob in June, 1971, and that he had consciously, deliberately and intentionally, by his own conduct, violated his probation by evading arrest and was arrested and confined in the Texas Department of Corrections from December 3, 1976, until August 8, 1978; (6) when appellant visited the children he would frighten them and cause them to cry and become upset by pulling on them and looking under their clothing to see if they were clean, or pulling on their hair to prevent them from running away from him, which acts upset the children and disrupted their emotional and physical well being; and (7) petitioners (appellees) testified that the step–father loved and cared for the children as his own, and that they had purchased a three bedroom home so each child could have a separate room, and that the family should all have the same surname and that adoption was in the best interest of the children.

Conclusions of law made by the trial court were:

"1.

When two parties are divorced and the court has considered the circumstances of the parents and finds the Respondent is able to make child support payments and that it is in the best interest of the children, the the (sic) Respondent is legally bound and subject to contempt for failure to pay if no court relief is sought 14.08(a) TEXAS FAMILY CODE.

2.

Further if such parent fails to support the children in accordance with his ability during a period of one year ending within six months of the date of filing of this petition (§ 15.02(E) of the TEXAS FAMILY CODE); and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well being of the children (§ 15.02(D) of the TEXAS FAMILY CODE); and the court finds that termination of the parent–child relationship between the children and the Respondent is in the best interest of the children (§ 15.02(2) of the TEXAS FAMILY CODE), then the court may grant the termination. 'In a suit to terminate the parent–child relationship, the broad rule which applies is that the best interest of the child shall always be the primary consideration of the court,' *Wiley vs. Spratlan*, 529 S.W.2d 616 (TEX.CIV. APP.1975). Section 15.02(1) (Supplement 1975), of the TEXAS FAMILY CODE, authorizes the court to terminate the parent–child relationship if the parent has engaged in the conduct specified in any of the various subparagraphs of that section, and if the court finds termination to be in the best interests of the children, *H.W.J. Sr. Appelant (sic) vs. The State Dept. of Public Welfare*, 543 S.W.2d 9 (TEXAS CIV.APP. 10–12–76)

3.

Neither would imprisonment of and by itself constitute the conduct described by subparagraph (E) of the TEXAS FAMILY CODE, § 15.02; But if such imprison–(sic) is the result of, or is coupled with, a voluntary, deliberate and conscious course of conduct which has the effect of placing or allowing the children to remain in conditions which endanger their physical or emotional well–being, a judgment terminating the parent–child relationship may be justified, *H.W.J. Sr. vs. The State Department of Public Welfare*, 543 S.W.2d 9 (TEX.CIV.APP.1976).

4.

If the Court also finds that the adoption of the children is in the best interest of the children and that all prerequisites and requirements for adoption have been met, then the Court may grant the adoption also, § 16.08(a) of the TEXAS FAMILY CODE."

Appellant brings points of error contending that the trial court erred in terminating the parent–child relationship because there is no evidence or insufficient evidence (1) that he had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well–being of the children, or (2) that he had failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. These points are directed to Tex. Fam.Code Ann. § 15.02(1)(D) & (E) (Vernon 1975); now § 15.02(1)(E) and (F) [1979]. Section 15.02 (1975) provides in part:

"A petition requesting termination of the parent–child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) The parent has:

\* \* \* \* \* \*

(D) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well–being of the children; or

(E) failed to support the child in accordance with his ability during a period of one year ending within six months of the filing of the petition; \* \* \* \* and

(2) termination is in the best interest of the child."

This suit was filed August 21, 1978, but the trial was not held until September 19, 1979. Appellant had been incarcerated in the State prison system since some date in 1976, and he was released on August 9, 1978, twelve days before this suit was filed. After release appellant made his first child support payment on September 29, 1978,

and thereafter paid $90 in October, $80 in November, and $80 in December, 1978. In 1979 he paid $80 in January, $80 in February, $70 in March, $70 in April, $100 in May, $80 in June, $77.77 in July, and $82.23 in August.

Ramona A'nette Smith, the children's mother, testified that appellant had a criminal record, that the children did not know him, that when he was with them he would look up under their clothes and pull on them and pull their hair, that he would nag them and they would cry, and that he would fuss with her and her husband. She further said the children did not like appellant "for the things they could see he was doing to me and their daddy and to them," and that the children "know nothing about [parents] but me and my husband as far as their mommy and their daddy," and they are confused now because their name is Mayfield and not Smith. Her testimony also was that when appellant was in prison she told a teacher to use the name Smith for the children if she wanted to do so, and that the reason she wanted appellant's parental rights terminated was for the emotional well–being and sanity of the children.

The step–father, Johnny Smith, testified that appellant visited once a month for 30 minutes to an hour.

Appellant testified that while he was in prison he received some money from his wife or family and used it for soap, tooth paste, and shaving items, and he had none left; that "when he got out of the pen" he started working at Brookshire Warehouse, and he made a child support payment out of the first check he received and has made one every month since.

Appellant further testified that he loved his children, that he could continue to support them, that he realized that his former wife and her husband did not want him to see the children, and they did not want the children to know that he is their father.

■ It is readily apparent from the record that there is no evidence that appellant failed to support his children *in accordance with his ability* during a period of one year

ending within six months of the date of the filing of the petition. It appears from the record that appellant was in the "pen" for the entire twelve months prior to the filing of the suit, and there is no evidence that he had the *ability* to make any support payments during that period. In oral argument counsel for appellees suggested that appellant, while confined in prison, could have sent for child support part of such funds as were sent to him by his family for toilet articles not furnished by the State. The record is silent as to the amount or total of such funds, and appellant testified after buying the toilet necessities he had no money remaining.

If it can be said that the record contains some evidence that appellant failed to support his children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition, it is our view that such evidence is insufficient to support the trial court finding, direct or implied, that appellant failed to support his children in accordance with his ability during the required period.

Even though the failure to have the ability to support a child was brought about by the parent's voluntary act, it may not be said that appellant failed to support his children in accordance with his ability. *Compasano v. State*, 576 S.W.2d 100, 104 (Tex.Civ.App.–Houston [1st Dist.] 1978, no writ).

■ Our careful review of the evidence fails to convince us that there is clear and convincing evidence that appellant had engaged in conduct which endangered the physical or emotional well–being of the children. There is nothing in the record that appellant ever hit the children or abused them physically; the only evidence that would remotely relate to the endangering of physical or emotional well–being of the children was that the children did not know appellant and were afraid of him, and that when he visited them he would try to pull them close to him. It is a matter of common knowledge that small children are reluctant to accept freely a stranger, but in

our view such a fact is insufficient to demonstrate that appellant has endangered either the physical or emotional well–being of the children. Either the mother or step–father appears to have been present on each visit appellant had with the children.

■ The additional ground appellants rely upon to support their contention that appellant engaged in conduct endangering the physical or emotional well–being of the children is that he was found guilty of the offense of robbery by assault, and after being placed on probation, caused such probation to be revoked and served a term in the penitentiary. It has been held that the imprisonment of a parent, alone and by itself, does not constitute intentional abandonment of his children, or conduct which endangers the physical or emotional well–being of a child or children. *H.W.J., Sr. v. State Department of Public Welfare,* 543 S.W.2d 9, 11 (Tex.Civ.App.–Texarkana 1976, no writ), and cases there cited; consequently, the commission of any intentional act which results in imprisonment, including violation of probation, is not sufficient grounds, standing alone, for termination.

■ It has also been held that a judgment terminating a parent–child relationship under Section 15.02 cannot rest solely upon the determination of the trial court of what would be in the best interest of the child, but the burden remains on the plaintiff to prove one of the grounds set out in the code before termination may be ordered. *Compasano v. State* supra, at 103.

There was no expert testimony nor an evaluation by a professional psychologist concerning any emotional impact upon the children by appellant's past criminal record or from the fact that their name was Mayfield while that of their mother and daddy [step–father] was Smith.

"Actions which break the ties between a parent and child 'can never be justified without the most solid and substantial reasons.'

\* \* \* \* \* \*

"The natural right which exists between parents and their children is one of constitutional dimensions." *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976).

The latest expression of the Supreme Court in an involuntary termination proceeding is, notwithstanding Texas Family Code, § 11.15, that the court's findings shall be based upon "clear and convincing evidence" as the standard of proof. *In Re G. M.,* 596 S.W.2d 846, 847 (Tex.1980). To the same effect is *In Re Hare,* 599 S.W.2d 856, 858 (Tex.Civ.App.–Texarkana 1980, no writ).

While we fully appreciate the feelings of the mother and step–father, and their concern for the children, a careful review of the statement of facts in this case convinces us that the proof adduced at the trial did not rise to the required standard. In our view the evidence is insufficient to sustain the judgment. Appellants' other points are not reached.

Judgment of the trial court is reversed and the cause is remanded.