**G.W.H., Appellant,**

**v.**

**D.A.H., Appellee.**

**No. B3016.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 1983.

Rehearing Denied March 10, 1983.

Curtis C. Mason, Huntsville, for appellant.

Jay A. Mallard, Angleton, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

PAUL PRESSLER, Justice.

This is an appeal from an order terminating a parent-child relationship pursuant to § 15.02 of the Texas Family Code. The parties will be identified only by their initials, pursuant to Tex.Fam.Code Ann. § 11.-19(d) (Vernon 1975). The appellant-father will be referred to as appellant or GWH. The appellee-mother will be referred to as appellee or DAH. The child will be referred to as either the child or TAH.

On March 26, 1981, DAH filed suit to terminate the parental rights of her husband, GWH, to their daughter, TAH. As grounds for termination appellee alleged that appellant had failed to support TAH in accordance with his ability for a period of one year. Appellee further alleged, in her second amended petition, that appellant had engaged in conduct which endangers the physical or emotional well-being of the child. Trial was to the court who terminated the parent-child relationship. We affirm the judgment of the trial court.

Appellant brings two points of error. We will first address the second point of error.

Section 15.02 of the Tex.Fam.Code provides for termination of the parent-child relationship if:

(1) the parent has: ...

(E) engaged in conduct or knowingly placed the child with persons who engage in conduct which endangers the physical or emotional well-being of the child;

. . . . .

and in addition, the court further finds that

(2) termination is in the best interest of the child.

At the time this suit was brought, appellant had begun serving a fifty year sentence in the Texas Department of Corrections. He was convicted of the murder of a young woman. Appellant contends on appeal that the trial court based the termination solely upon this conviction and sentence. He argues that proof of a single criminal act is insufficient to support the termination of parental rights under subparagraph (1)(E) of § 15.02. *Mayfield v. Smith,* 608 S.W.2d 767 (Tex.Civ.App.—Tyler 1980, no writ). Were this allegation of the appellant correct, we would agree that this would not be a basis for termination. However, we find no support for this contention. The trial court's findings of fact state that appellant strangled a named female, that this showed his propensity for violence and that he has engaged in conduct which endangers the physical or emotional well-being of the child. In a separate finding, the court found that "there was sufficient evidence to show that the appellant used violence on females in general. . . ." The record confirms that the trial court based its judgment upon several acts of violence. The evidence concerning these is unchallenged on appeal.

Evidence was admitted at trial showing that appellant had been arrested for rape, had struck his wife on several occasions, had struck a girlfriend, that the police had to be summoned to his wife's parent's house because of difficulty he was causing, and that on one occasion he held the child upstairs and refused to let her down until his wife would come upstairs and talk to him. Appellant argues that this evidence can be used only to show what would be in the best interest of the child. We find no support for this proposition. Although objection was made to this evidence, the court made no clear ruling limiting the purpose for which it was admitted. Appellant did not press for such rulings. None of the court's findings of fact are expressly limited to the issue of best interest. Therefore, we hold that this evidence was generally admitted and could properly form the basis for termination of appellant's parental rights. If imprisonment is the result of, or is coupled with, a voluntary, deliberate and conscious course of conduct which endangers the child's physical or emotional well-being, a judgment terminating the parent-child rela-

tionship may be justified. *Mayfield v. Smith,* supra. Appellant's second point of error is, therefore, overruled.

Since the findings, already approved, together with the uncontested finding that termination is in the best interest of the child, is sufficient for termination under § 15.02 of the Tex.Fam.Code, we will not discuss appellant's first point of error.

The judgment of the trial court is, therefore, affirmed.

MURPHY, Justice, dissenting.

I respectfully, but vigorously, dissent. Each element justifying termination of the parent-child relationship under § 15.-02(1)(E) of the Family Code (Vernon Supp. 1982) is a fact question. Evidence of both elements is necessary to support a termination. *See Wiley v. Spratlan,* 543 S.W.2d 349, 350 (Tex.1976); *Whiteside v. Dresser,* 543 S.W.2d 158 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.

DAH amended her petition eight days before trial and changed the alleged statutory ground of termination from failure to support for one year under § 15.02(1)(F) to the endangerment ground under (1)(E). For purposes of this dissent, it will be assumed that DAH was entitled to introduce evidence in support of the (1)(E) ground, and due to the absence of explicit trial court rulings, it will also be assumed that all evidence admitted could be viewed as proof of both findings, i.e., physical or emotional endangerment and best interest of the child.

There is a strong presumption that a child's interests will best be served by maintaining custody with his or her natural parents. *Sanchez v. Texas Dept. of Human Resources,* 581 S.W.2d 260 (Tex.Civ.App.— Corpus Christi 1979, no writ). The natural right which exists between parents and their children is one of Constitutional dimensions, recognized by the U.S. Supreme Court in such decisions as *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and by our Su-

preme Court in *Wiley v. Spratlan,* 543 S.W.2d 349. The State is obliged, therefore, to bear a serious burden of justification before it may intervene and terminate parental rights. *Wiley v. Spratlan,* 543 S.W.2d at 352. The quantum of evidence necessary to rebut the presumption is discussed in detail later in the opinion.

## PROOF OF § 15.02(1)(E), PHYSICAL OR EMOTIONAL ENDANGERMENT

In Texas, there seems to be a split of authority on the issue of whether the parent must actually physically or emotionally abuse the child or knowingly place the child in harmful surroundings in order to prove endangerment.

One line of cases at first blush seems to hold that it is not necessary that the harmful conduct of a parent be directed at the child, or that the child actually suffer injury. *In re Guillory,* 618 S.W.2d 948, 950–951 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803, 806 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ). Upon closer scrutiny, however, these cases deal with parents who actually directed harmful conduct at the child. In *Allred,* the father beat the mother when she was pregnant with the child, and after the baby was born, the father knowingly and consciously allowed the baby to be placed in "unstable settings" where he suffered trauma. 615 S.W.2d at 806. Therefore, the father's acts and omissions directly constituted endangerment. In *Guillory,* the mother's rights were terminated when testimony indicated the mother used heroin both while pregnant and after the child's birth, and that the infant showed obvious signs of neglect when she was removed from the home. 618 S.W.2d at 950. In fact, the opinion explicitly states that "(t)here is evidence sufficient to support a finding that Nancy Guillory has engaged in conduct, before and after the birth of Tisha, which endangered the physical and emotional well-being of the child." *Id.* at 951. Thus, this line of cases may in theory or hypothetically stand for the proposition

that no harmful conduct need be directed at the child, but in actuality such harm did occur, either by act or omission of the parent in question.

Another group of cases sides with the approach of the only case relied on by the majority, *Mayfield v. Smith,* 608 S.W.2d 767 (Tex.Civ.App.—Tyler 1980, no writ), which holds that termination is not justified unless the record contains evidence that the parent did actually hit or abuse the child. *Accord In re L.F.,* 617 S.W.2d 335 (Tex.Civ. App.—Amarillo 1981, no writ); *In re Hare,* 599 S.W.2d 856 (Tex.Civ.App.—Texarkana 1980, no writ).

Commission of an intentional act which resulted in imprisonment is not, standing alone, sufficient grounds for termination. *Mayfield,* 608 S.W.2d at 771. However, if the imprisonment is the result of, or is coupled with, a deliberate "course of conduct *which has the effect of placing or allowing the children to remain in conditions which endanger their physical or emotional well-being,* a judgment terminating the parent-child relationship may be justified." *Id.* at 769 (emphasis added), citing *H.W.J. Sr. v. The State Dept. of Public Welfare,* 543 S.W.2d 9 (Tex.Civ.App.—Texarkana 1976, no writ). There was no evidence in the *Mayfield* record that the father abused the children before or after his imprisonment, or that they were endangered physically or emotionally as a result of his imprisonment, and therefore the trial court's termination was reversed. *Id.* at 770–771.

## PROOF OF § 15.02(2), TERMINATION IS IN THE BEST INTEREST OF THE CHILD

The record must also contain evidence that termination of the parent-child relationship is in the best interest of the child. *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976).

*Holley* sets out the factors to be considered by a court in determining the best interest of the child, including present or future emotional or physical danger to the child, the acts or omissions of the parent, the stability of the proposed placement, and any excuse for the parent's acts or omissions. 544 S.W.2d at 372.

## STANDARD OF PROOF FOR BOTH ELEMENTS

Due process requires that the allegations supporting termination of parental rights be proved by at least "clear and convincing evidence." *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *Diaz v. Beyer,* 611 S.W.2d 726 (Tex.Civ.App. —Waco 1981), cert. denied, 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982); *Mayfield v. Smith,* 608 S.W.2d 767. That standard has been defined as the "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.,* 596 S.W.2d at 847. The United States Supreme Court, in holding this standard to be constitutionally proper, has made this observation:

A standard of proof that by its very terms demands consideration of the quantity, rather than the quality, of the evidence may misdirect the fact-finder in the marginal case. See *In re Winship,* 397 U.S. [358] at 371, n. 3 [90 S.Ct. 1068, 1076, n. 3, 25 L.Ed.2d 368] (Harlan, J., concurring). Given the weight of the private interests at stake, the social cost of even occasional error is sizable.

Raising the standard of proof would have both practical and symbolic consequences. Cf. *Addington v. Texas,* 441 U.S. [418] at 426 [99 S.Ct. 1804, 1809, 60 L.Ed.2d 323]. The Court has long considered the heightened standard of proof used in criminal prosecutions to be "a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship,* 397 U.S., at 363 [90 S.Ct. at 1072]. An elevated standard of proof in a parental rights termination proceeding would alleviate "the possible risk that a factfinder might decide to [deprive] an individual based solely on a few isolated instances of unusual conduct [or] ... idiosyncratic behavior." *Addington v. Texas,* 441 U.S., at 427 [99 S.Ct. at 1810]. "Increasing the burden of proof is one way to impress the

factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate" terminations will be ordered. *Ibid.*

*Santosky v. Kramer,* 102 S.Ct. at 1400.

Therefore, in order for the trial court in this case to have had support for its findings of endangerment and best interest, it needed to rely on clear and convincing evidence that GWH either physically or emotionally endangered TAH as a direct result of his acts or omissions, or that the fact of his incarceration was coupled with a deliberate course of conduct which had the effect of placing or allowing TAH to remain in conditions which endangered the child's physical or emotional well-being. In addition, the court needed to find clear and convincing evidence that termination of the parent-child relationship was in the best interest of TAH.

I find absolutely no clear and convincing evidence in this record which justifies termination. On the contrary, there is evidence that TAH was "well guarded, protected, had clothing, food, (a) place to stay"; that the needs of TAH were being met while GWH was in prison; and that GWH never became violent with the child. The record reveals that GWH's conviction is on appeal; DAH testified that between the time she and GWH separated in July 1979 and the parties were divorced in February 1980, GWH had visited with TAH approximately 20 times; that GWH was incarcerated from December 27, 1979 until March 27, 1980; and that GWH saw TAH three or four times after the divorce was granted; and that the rape charge filed by DAH, and for which GWH was arrested during their separation, had been dismissed. There is no evidence explaining why the police were summoned to the house of DAH's parents. There is no evidence that when GWH struck DAH or his "girlfriend" that TAH was present. On the one occasion when GWH held TAH upstairs and refused to let her down until DAH would come upstairs and talk to him, there was no evidence that the conduct physically or emotionally endangered TAH.

## CONCLUSION

The evidence fails to show by a clear and convincing standard, or even by a lesser one, that the trial court was justified in finding GWH's parental rights should be terminated under § 15.02(1)(E) of the Texas Family Code. Regardless of whether the court was justified in finding termination to be in the child's best interest, according to case law guidelines the endangerment ground was not proved. Since both elements—endangerment and best interest— were not proved, no termination should have occurred.