**The TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellant,**

**v.**

**J.T.H., Appellee.**

**No. 13–85–143–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 14, 1985.

Michael Mankins, Corpus Christi, for appellant.

Farooq Lakhani, Corpus Christi, for appellee.

Before KENNEDY, UTTER and SEER-DEN, JJ.

## OPINION

KENNEDY, Justice.

The Texas Department of Human Resources (TDHR) brought suit to terminate the parent-child relationship between M.D.G., the child; P.A.G., the child's mother; and J.T.H., the child's father. The trial court terminated the parent-child relationship between the mother and M.D.G., but denied appellant's petition for termination of the parent-child relationship between J.T.H. and the child. Appellant asserts three points of error in the trial court's judgment with regard to J.T.H. We reverse and remand for new trial.

J.T.H. began living with P.A.G. in 1977. M.D.G. was born in April of 1978. The trial court found that J.T.H. is the parent of M.D.G. The father and mother were married in July of 1978 and separated in "early '80 or the end of '79." The mother has not seen J.T.H. or received any support from him since they separated. The mother obtained a divorce from J.T.H. on January 18, 1983. The mother testified that she thought J.T.H. was in Florida working on a fishing boat, that his regular occupation was carpentry and that he made a "pretty good living at carpentry." However, the mother is not sure as to J.T.H.'s whereabouts or whether he is able-bodied and gainfully employed. Dennis Sliter, a social worker with TDHR, testified that he was unable to locate J.T.H. Sliter found that J.T.H. had been paroled to Florida from the Texas Department of Corrections. He "tried" to talk with J.T.H.'s parole officer, but the parole officer could not be found. However, he did testify that Ninfa Cano, once a child placement specialist with TDHR, had contacted J.T.H.'s parole officer and found J.T.H. worked on a boat, Calico Jack, in Port Canaveral. Sliter did not attempt to locate J.T.H's relatives.

Appellant, by point of error two, complains that the trial court erred in refusing

to submit appellant's requested issues, based on TEX.FAM. CODE ANN. § 15.02 (Vernon Supp.1985), to the jury. Appellant's contested allegations of misconduct under § 15.02(1) are that J.T.H. "(C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;" or "(F) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition." We will preface our holding as to this point of error with a discussion of the applicable evidentiary standard in a parent-child termination suit.

"The clear and convincing evidence standard of proof will be required in all proceedings for involuntary termination of the parent-child relationship." *In Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *see also In Interest of A.L.F.*, 690 S.W.2d 106 (Tex.App.—Beaumont 1985, no writ). The United States Supreme Court mandated clear and convincing evidence as the proper evidentiary standard to be utilized in parent-child termination suits. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Although the evidence need not be unequivocal or undisputed, the clear and convincing evidence standard requires that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). Testimony shows that J.T.H. has been away approximately four years, well beyond the six month and twelve month periods required by § 15.02(1)(C) and (F), respectively. Further, the mother testified that J.T.H. has not provided any support for the upbringing of M.D.G. since he left. However, the Texas Department of Human Resources must show that J.T.H. *voluntarily* left the child under § 15.02(1)(C) or failed to support the child in accordance with his *ability* under § 15.02(1)(F).

■ The burden lies with the State to present sufficient evidence of acts of mis-

conduct under § 15.02(1) and (2). *Mayfield v. Smith*, 608 S.W.2d 767 (Tex.Civ.App.— Tyler 1980, no writ); *Compasano v. State*, 576 S.W.2d 100 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Sliter testified that J.T.H. was paroled to Florida, but he did not check with the penitentiaries to determine if J.T.H. had been imprisoned. Mere imprisonment does not constitute intentional abandonment of the child contemplated under § 15.02(1)(C). *Mayfield v. Smith*, 608 S.W.2d at 771; *H.W.J. v. State Department of Public Welfare*, 543 S.W.2d 9 (Tex.Civ.App.—Texarkana 1976, no writ). TDHR had the ability to determine J.T.H.'s whereabouts during his four year absence. Ninfa Cano contacted J.T. H.'s parole officer according to Sliter, but no evidence was introduced regarding his sentence. Alternately, TDHR had the burden to show J.T.H. had the *ability* to make support payments. *Hellman v. Kincy*, 632 S.W.2d 216 (Tex.App. Fort Worth 1982, no writ); *Mayfield v. Smith*, 608 S.W.2d at 770. The mother went so far as to admit she had no personal knowledge that J.T.H. was able-bodied, nor did TDHR present evidence of that fact. Appellant failed to produce that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.

It may well be true that termination of the parent-child relationship in this case would be in the best interest of the child. However, under § 15.02 the best interest of the child is only one of two prongs the State has the burden to prove with clear and convincing evidence.[1] Based on the facts and circumstances of this particular case, the State has fallen far short of its burden. TDHR has knowledge of J.T.H.'s parole and his parole officer. Accounting for his whereabouts is easily discernible by mere introduction of his prison sentence and communication with his parole officer.

■ Having discussed the proper evidentiary standard, we must turn our attention to the trial court's failure to submit appel-

1. The other prong being one of eleven acts of conduct under § 15.02(1).

lant's special issues to the jury. Although appellant failed to produce that degree of proof required under the clear and convincing evidence standard, such failure is not controlling with regard to submission of special issues. The Texas Supreme Court has held: "The court may not, however, properly refuse to submit an issue or disregard the jury's answer thereto merely because the evidence is factually insufficient to support the same." *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). The trial court "upon request of either party, shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case." Tex.R.Civ.P. 277. Appellant properly pleaded and requested special issues with regard to termination of the parent-child relationship under TEX. FAM. CODE ANN. § 15.02 (Vernon Supp. 1985). The record contains evidence of when J.T.H. left the mother, the lack of any support from him, his occupation and his *possible* whereabouts for the four years since he left. We agree with appellant that the trial court erred in denying submission of these special issues to the jury. Tex.R. Civ.P. 277; *see Whiteside v. Dresser*, 543 S.W.2d 158 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). "If there was evidence to support the special issues, the trial court's refusal to submit such issues constituted reversible error." *Southwestern Bell Telephone Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977). Appellant's second point of error is sustained.

We decline to further discuss appellant's other points of error as the controlling issues have been decided. Tex.R.Civ.P. 451. The judgment of the trial court is REVERSED and REMANDED for new trial.