JUAN A——— and Patricia
A———, Appellants,

v.

## DALLAS COUNTY CHILD WELFARE, Appellee.

No. 05–86–00025–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 1987.

Brenda J. Garrett, J. Thomas Sullivan, Lana Johnson, Carol Vaughan, Dallas, for appellants.

Ellen A. Abbott, Dallas, for appellee.

Before STEWART, ROWE [1] and BAKER [2], JJ.

STEWART, Justice.

The Texas Department of Human Resources (State) brought suit to involuntarily terminate the parent-child relationship between four year old R.A. and his natural parents, Patricia and Juan A___ (Patricia and Juan). After a nonjury hearing, the judge entered a decree terminating Patricia's and Juan's parental rights. Patricia and Juan bring separate appeals. We hold that the trial court properly terminated Patricia's and Juan's parental rights and affirm.

As Patricia attacks the sufficiency of the evidence, the facts or lack thereof developed at trial become paramount. Accordingly, we develop the facts at length.

---

**1.** The Honorable Gordon Rowe, Justice, succeeded the Honorable Cynthia Hollingsworth, Justice, at the expiration of her term on December 3, 1986.

**2.** The Honorable James A. Baker, Justice, participated in this cause by assignment in place of the successor to the Honorable John C. Vance, Justice, who retired effective December 31, 1986.

The incident giving rise to these termination proceedings occurred on January 31 when R.A., aged four, received third degree burns on his feet, hands and buttocks. Patricia was not present when the burns occurred; however, when she returned home, Juan told her that R.A. received the burns while taking a bath. Patricia and Juan telephoned Parkland Hospital to determine the appropriate treatment, and they initially treated R.A.'s burns themselves.

At trial, Patricia testified that she knew she should have rushed R.A. to the hospital when she first saw the burns and wanted to do so; however, she testified that the reason she did not was because she was afraid of Juan. She testified that (1) Juan had beaten her on many occasions, sometimes in front of their four children, (2) she knew Juan had a prior conviction for assault, (3) Juan had struck another of their children with a belt, (4) Juan had slapped the same child across the porch on another occasion, (5) Juan was under a prison sentence at the time of trial because a jury had found him criminally guilty of injuring R.A., and (6) she believed that Juan could have hurt R.A. intentionally if Juan had been in a bad temper that day. A Dallas County intake worker added that Patricia was aware of another incident in which Juan kicked one of their children in the neck and in the head. Other reasons she gave for not taking R.A. to the hospital were that Juan would not let her and that she was afraid that Juan would get in trouble.

Approximately two weeks later, during which time R.A. was bedridden, and a full two or three days after noticing that one of R.A.'s toes was coming off, Patricia took R.A. to the Dallas/Fort Worth Medical Center. The nurse who initially treated R.A. testified that his toes had webbed and had to be separated by running a blade between them. When she asked R.A. why he had not gotten out of the tub, she said that R.A. responded, "My daddy wouldn't let me out."

The physician who treated R.A. testified that R.A. had full-thickness burns and that it was necessary to amputate several of R.A. toes, some of which could have been saved had R.A. been treated immediately. He testified that by the time he saw R.A. the burns were already two to three weeks old. He further stated that a parent should have realized immediately that R.A.'s burns were not minor burns and that neither Patricia nor Juan evidenced the proper concern for their injured child.

Regarding the nature of the burns, the same physician stated that Patricia and Juan's account of the burns was completely inconsistent with his findings, which were that burns as deep as R.A.'s required a prolonged exposure to very high temperature water and that a normal child—one that was not a paraplegic or quadriplegic or one that had any sensation in his limbs— could not injure himself in this way. A Dallas County Child Welfare intake worker testified that she had visited the home where the injury occurred and observed that the bathtub was a common bathtub and that she, therefore, saw no reason why R.A. could not have stepped out of the tub if he had wanted to.

A psychologist clinically interviewed Patricia and administered some objective tests, including an adult intelligence test. He testified that the tests indicated Patricia functioned in the borderline range of intellectual functioning and her verbal skills were significantly lower than her performance skills. He added that Patricia had a paranoid personality structure, poor reality testing, and strong dependency needs. In his opinion, Patricia was not able to provide a consistent environment for R.A. and it was unlikely that she would be able to protect R.A. in the future.

A psychological associate at the Child Guidance Clinic interviewed R.A. and administered to him a psychological examination. The associate stated that R.A. appeared attached to his family but that R.A. was unmanageable, uncooperative, and needed a consistent routine environment.

The trial court found that both Patricia and Juan knowingly placed and knowingly allowed the child to remain in conditions that endangered the physical and emotional

well-being of the child. TEX.FAM.CODE ANN. § 15.02(1)(D)(Vernon 1986). [hereinafter cited as FAM.CODE]. The court further found that both Patricia and Juan engaged in conduct that endangered the physical and emotional well-being of the child and that both knowingly placed the child with persons who engaged in conduct that endangered the physical and emotional well-being of the child. FAM.CODE § 15.02(1)(E). Finally, the decree states that termination of the parent-child relationship between both parents and the child would be in the best interest of the child. FAM. CODE § 15.02(2).

Actions breaking the link between a parent and child "can never be justified without the most solid and substantial reasons." *State v. Deaton*, 93 Tex. 243, 54 S.W. 901 (1900). Indeed, the due process clause of the United States Constitution requires the State to prove its allegations by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980).

■ In her point of error two, Patricia contends that there was insufficient evidence establishing by clear and convincing proof the trial court's 15.02(1)(E) findings. If the State proved by clear and convincing evidence either that Patricia engaged in conduct that endangered the physical *or* emotional well-being of the child *or* knowingly placed the child with persons who engaged in such conduct, the requirements of section 15.01(1)(E) are satisfied.

When deciding factual sufficiency points, we must consider all the evidence in deciding the question. *Garza v. Alviar*, 395 S.W.2d [821] at 823. The requirement of clear and convincing evidence is merely another method of requiring that a cause of action be supported by factually sufficient evidence. *State v. Turner*, 556 S.W.2d 563 (Tex.1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978). The clear and convincing evidence standard is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.

*Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). As the trier of fact, the trial judge is in the best position to observe the witnesses and weigh the probative force of the evidence. See, *e.g.*, *In the Interest of J.D.H.*, 661 S.W.2d 744, (Tex.App.—Beaumont 1983, no writ); *Smith v. McLin*, 632 S.W.2d 390 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

■ We first address whether Patricia herself engaged in conduct that endangered the physical or emotional well-being of R.A. Although Patricia did telephone Parkland Hospital in order to learn how best to treat R.A.'s burns, the physician who treated R.A. stated that a parent should have immediately recognized that R.A.'s burns were not minor. Furthermore, Patricia admitted wanting to take R.A. to the hospital immediately upon seeing the burns, which illustrates that she recognized the severity of the burns but nevertheless failed to act. Even after noticing one of R.A.'s toes was falling off, Patricia failed to act for several days. There was evidence that some of R.A.'s toes could have been saved if Patricia had acted immediately. We hold that Patricia's failure to act under these facts is conduct that endangered the physical well-being of R.A. and that the trial court's finding to this effect is supported by clear and convincing evidence. This finding alone is sufficient to support the judgment under section 15.02(1)(E). Consequently, we need not address Patricia's contention that the evidence is insufficient to support the trial court's finding as to the second prong of section 15.02(1)(E) that she knowingly placed the child with other persons who engaged in conduct endangering R.A. Patricia's second point of error is overruled.

Because termination is justified under section 15.02(1)(E), we likewise need not address Patricia's first point of error attacking the trial court's findings under section 15.02(1)(D). Patricia does not attack the trial court's finding that termination of her parental rights is in the best interest of the child.

Both Patricia and Juan urged error because the trial court failed to file specific findings of fact to support the judgment. We sustained these points in our earlier opinion wherein we abated this cause for the trial court to file specific findings under sections 15.02(1)(D) and (E). Therefore, we now address Juan's remaining two points of error.

In Juan's second point of error, he contends that the trial court improperly admitted evidence of Juan's conviction for injury to a child 14 years of age or younger. The conviction is based upon the same conduct that is the subject of this suit and was on appeal at the time of the nonjury hearing. Juan first relies upon rule 609(e) of the Texas Rules of Evidence,[3] which excludes convictions that are on appeal. Juan argues that rule 609 governs admissibility of convictions for criminal offenses; that rule 609(e) excludes convictions on appeal; that there is no other provision of the Texas Rules of Evidence authorizing use of nonfinal convictions; and consequently, this conviction was inadmissible for any purpose. The State responds that rule 609 governs admissibility of convictions only for purposes of impeachment; that Juan's conviction is relevant to the issue of best interest of the child and, therefore, is generally admissible under rule 402; and that the State specifically offered and the trial court specifically admitted the conviction, not to impeach Juan, but as direct evidence on the issue of best interest.

■ Specifically, the State argues that the nonfinal conviction is admissible as a fact in Juan's personal history and is relevant to the issue of best interest because, at the time of trial, Juan was in prison serving a fifty year sentence as a result of the conviction. We agree that Juan's imprisonment is a "circumstance" affecting Juan's ability to parent and to provide for the emotional and physical needs of his child because he was unavailable to meet his child's needs directly. Although it may

be relevent to the determination of best interest, imprisonment *per se* is not a ground for termination. FAM.CODE § 15.02(1); *see Texas Department of Human Resources v. J.T.H.*, 700 S.W.2d 718 (Tex.App.—Corpus Christi 1985, no writ); *H.W.J. v. State Department of Public Welfare*, 543 S.W.2d 9 (Tex.Civ.App.—Texarkana 1976, no writ). Yet, the fact of imprisonment may be proved without the introduction of the conviction causing the imprisonment as, indeed, it was in this case. Juan testified without objection that he was currently in prison. His attorney did not object until the State sought to introduce the reasons for his imprisonment, i.e., his conviction for the same conduct that was one of the grounds for termination of his parental rights.

■ The State has cited no authority, other than rule 402, to support its contention that this nonfinal conviction is admissible in evidence. Rule 402 provides that all relevant evidence is admissible. The exception in that rule states that relevant evidence is inadmissible if a constitution, a statute or another rule of evidence so provides. The State concedes that the conviction is inadmissible under rule 609(e) but contends that because the conviction was offered to attack Juan's character, rather than to impeach his credibility, rule 609 is inapplicable. We disagree. We hold that rules 609 and 803(22)[4] provide the only authority under the Texas Rules of Evidence for admitting a prior felony conviction and unless a conviction meets the requirements of those rules, it is inadmissible. Neither allows the admission of a conviction on appeal. Juan's second point of error is sustained.

■ In his third point of error, Juan asserts that the trial court erred in admitting his prior final conviction for assault. He relies on rule 609(a) which provides: "For the purpose of attacking the credibility of a witness, evidence that he has been

**3.** All subsequently cited rules, unless otherwise indicated, are the Texas Rules of Evidence.

**4.** Rule 803(22) admits evidence of a felony conviction "entered after a trial or upon a plea of

guilty (but not upon a plea of *nolo contendere*), ... to prove any fact essential to sustain the judgment of conviction. The pendency of an appeal renders such evidence inadmissible."

convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude,...." TEX.R. EVID. 609(a) (Vernon Supp.1986). An assault conviction is a class A misdemeanor, not a felony, TEX.PENAL CODE ANN. § 22.01 (Vernon 1974), and is not a crime involving moral turpitude. *Young v. State*, 96 Tex.Crim. 197, 256 S.W.2d 925 (1923). The State again argues that the assault conviction is relevant to the issue of best interests of the child, and, thus, generally admissible under rule 402 and that, because the conviction was offered to prove Juan's propensity for violence and not for impeachment purposes, rule 609 does not apply. Again, we disagree. Neither rules 609 nor 803(22) applies to misdemeanor offenses. Because Juan's prior conviction for assault is a misdemeanor and does not involve moral turpitude, it is not admissible under rule 609(a), and it is not admissible under rule 803(22) because that rule only applies to felony convictions. Juan's third point of error is sustained.

■ Having ruled that the trial court erred in admitting these two convictions we must now determine whether the errors require reversal of the judgment because they amounted to such a denial of Juan's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1) (formerly TEX.R.CIV.P.ANN. 434 (Vernon 1985)). We have reviewed the record and conclude there was more than ample admissible evidence to support the trial court's finding that it was in R.A.'s best interest to terminate Juan's rights. Consequently, we hold that the erroneous admission of these convictions was harmless error in this trial before the court.

The judgment is affirmed.