In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00067-CR


______________________________




ANDY LELAND ANDERSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 21517




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Andy Leland Anderson appeals from his jury conviction of the second-degree felony offense
of evading arrest/detention with a vehicle. See Tex. Penal Code Ann. § 12.42 (Vernon Supp.
2007), § 38.04 (Vernon 2003). The jury found that a deadly weapon was used during the offense. 
See Tex. Penal Code Ann. § 12.35(c)(1) (Vernon Supp. 2007). Further, Anderson pled "true" to
the enhancement paragraph of the indictment. The jury assessed Anderson's punishment at fifteen
years' imprisonment and a $2,500.00 fine. Anderson was represented by appointed counsel at trial
and by different appointed counsel on appeal.

 Appellate counsel filed a brief August 29, 2007, under the mandate of Anders v. California,
386 U.S. 738 (1967), and Ex parte Senna, 606 S.W.2d 329, 330 (Tex. Crim. App. 1980), and has
accordingly also filed a motion to withdraw. Counsel sent Anderson a copy of the brief and advised
Anderson by letter he believes there are no arguable contentions of error. He also informed
Anderson of his right to review the record and file a pro se response. 

 Counsel has filed a brief which discusses the record and reviews the proceedings. Counsel
has thus provided a professional evaluation of the record demonstrating why, in effect, there are no
arguable grounds to be advanced, as required by High v. State, 573 S.W.2d 807, 812 (Tex. Crim.
App. [Panel Op.] 1978). See also Stafford v. State, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App.
1991). Counsel concluded from his review of the record there is no arguable point of error to
support the appeal. 

 Counsel further states in the brief that the trial court had jurisdiction over the case, that there
were no pretrial matters raised and overruled by the trial court, that jury selection was proper, that
the evidence is both legally and factually sufficient, that the court's charge was proper, and that
Anderson received effective assistance of counsel. Counsel's statements are supported by the record.

 Anderson has now filed a pro se response in which he raises issues concerning improper jury
selection and ineffective assistance of counsel.

 Anderson states in his pro se response that, during trial, he requested his counsel to challenge 
for cause a veniremember who was an attorney. That veniremember, according to Anderson, was
the foreman of the jury. However, Anderson gives no reasons why he believed this veniremember
should not have served on the jury, and we find no reason in the record. We note that Anderson's
attorney exercised all ten of his peremptory challenges. There is no evidence in the record that the
veniremember was subject to a challenge for cause. We find no basis for determining that any error
occurred in the selection of the jury.

 Further, Anderson states he requested a different attorney be appointed him before the trial,
but his request was refused; that counsel did not object often enough during trial; and that counsel
called Anderson a "screw up." 

 In the absence of adequate cause for the appointment of new counsel or an effective waiver
of the right to counsel to pursue self-representation, an accused does not have the right to appointed
counsel of choice but must accept counsel assigned by the court. Thomas v. State, 550 S.W.2d 64,
68 (Tex. Crim. App. 1977); Long v. State, 137 S.W.3d 726, 735 (Tex. App.--Waco 2004, pet. ref'd);
see Dunn v. State, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991); Aguilar v. State, 651 S.W.2d 822,
823-24 (Tex. App.--Houston [1st Dist.] 1983, no pet.). There is no error in the trial court's refusal
to appoint different counsel.

 Anderson next states in his pro se response that he received ineffective assistance of counsel.
The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v.
Washington, 466 U.S. 668, 687 (1984); see also Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim.
App. 1986). To be entitled to a new trial because his or her trial counsel was ineffective, an
appellant must show (1) that counsel's performance was so deficient that counsel was not functioning
as acceptable counsel under the Sixth Amendment and (2) that, but for counsel's error, the result of
the proceedings would have been different. See Strickland, 466 U.S. at 687; Gamble v. State, 916
S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.). 

 Anderson was tried on an evading arrest charge. At trial, a videotape showing the chase was
introduced into evidence and played for the jury. This tape showed a twenty- to twenty-five-minute
high-speed chase over rain-slick and curvy roads, with Anderson driving left of center several times,
and with other vehicles on the road. 

 Although Anderson pled not guilty, there was no contest to the charge. At the punishment
phase, he testified and admitted that he was driving, that his flight was hazardous to people around
him, and that he could have killed someone. From the record, trial counsel's strategy appears to have
been to have Anderson plead not guilty, while making it clear to the jury that the real issue was
whether the vehicle was used as a deadly weapon. Under the circumstances, this could be considered
sound trial strategy. As to Anderson's complaint that he was characterized as "a screw-up," the
record shows that trial counsel argued to the jury at punishment that Anderson deserved a second
chance and a lesser punishment because he was simply "a screw-up," not the dangerous criminal that
the State argued he was. Trial counsel also had family members testify at the punishment phase,
including two of Anderson's children, in an attempt to mitigate the punishment. The range of
punishment in this case was two to twenty years and a possible $10,000.00 fine. See Tex. Penal
Code Ann. § 12.33 (Vernon 2003). The jury assessed Anderson's punishment at fifteen years'
confinement and a $2,500.00 fine. 

 Further, trial counsel challenged several members of the venire panel. Each challenge for
cause was granted by the trial court. Counsel also made timely objections throughout the trial. 

 Anderson further complains that his attorney did not object to the State's attorney's argument
that, if the jury found that no deadly weapon was used, the maximum punishment was two years'
confinement. This offense is a state-jail felony for which the maximum sentence is two years'
confinement. See Tex. Penal Code Ann. § 38.04(b)(1). So the State's argument was not
inaccurate. To have objected, the defense attorney would need to explain that Anderson could be
subject to an enhanced penalty if the jury (at the later punishment stage) found that he had been
previously convicted of a felony. Counsel may have determined the wiser course of action was to
avoid that explanation rather than make an objection to the State's argument. Therefore, counsel was
not ineffective for failing to object. No ineffective assistance of counsel is shown by the record in
this case.

 We have reviewed the record and find the evidence sufficient to support the conviction. We
agree with counsel there are no arguable points of error in this case. (1)

 We affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: November 15, 2007

Date Decided: November 16, 2007


Do Not Publish



1. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Anderson in this case. No
substitute counsel will be appointed. Should Anderson wish to seek further review of this case by
the Texas Court of Criminal Appeals, Anderson must either retain an attorney to file a petition for
discretionary review or Anderson must file a pro se petition for discretionary review. Any petition
for discretionary review must be filed within thirty days from the date of either this opinion or the
last timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any
petition for discretionary review must be filed with this Court, after which it will be forwarded to
the Texas Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App.
P. 68.3. Any petition for discretionary review should comply with the requirements of Rule 68.4 of
the Texas Rules of Appellate Procedure. See Tex. R. App. P. 68.4.


ohn in November 2002. In this service plan,
John was required to cooperate with the Department in placing T.H. with relatives. The Department
attempted to arrange for T.H. to live with T.H.'s maternal great aunt and uncle in New Orleans, Mr.
and Mrs. Hepting. However, the couple separated, and the plans for T.H. to live with the Heptings
fell through in May 2003. John states he had not known about this development. Caseworkers
concede they did not contact John regarding the matter. 
            On the day of the hearing, August 8, 2003, John was imprisoned in Louisiana for burglary
and appeared by telephone.


 At the trial, Bertile Johnson, a caseworker for Child Protective
Services, testified she had never had any conversation or correspondence with John. She also
testified she was unaware of the fact John had left the name and contact information for his mother,
recommending that T.H. be placed with her. Dani Price, a Court-Appointed Special Advocate
(CASA) volunteer, also testified she had never contacted John. Shurhonda Thurmond, a child
caseworker with the Department, testified that she never contacted John by telephone or letter and
that she knew of no caseworker who had contacted him. 
             In its termination order, the trial court found that John knowingly placed or knowingly
allowed T.H. to remain in conditions or surroundings which endangered the physical or emotional
well-being of the child and that John engaged in conduct which endangered the physical and
emotional well-being of the child. Finding also that termination of John's parental rights was in
T.H.'s best interest, the trial court terminated his parent-child relationship with T.H.
Denial of Request for Jury Trial
            In his supplemental point of error, John contends the trial court erred in denying his request
for a jury trial. For reasons set forth below, we overrule his point of error. We review the entire
record for an abuse of the trial court's discretion in denying a request for a jury trial. Mercedes-Benz
Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996).
            The Texas Rules of Civil Procedure provide that "[n]o jury trial shall be had in any civil suit,
unless a written request for a jury trial is filed with the clerk of the court a reasonable time before
the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance." 
Tex. R. Civ. P. 216. A request for a jury made within thirty days of trial may still be timely under
certain circumstances. For instance, lack of notice of a trial setting can have an effect on the
timeliness of a jury request. See Bell Helicopter Textron, Inc. v. Abbott, 863 S.W.2d 139, 141 (Tex.
App.—Texarkana 1993, writ denied). Rule 245 of the Texas Rules of Civil Procedure was amended
to harmonize with Rule 216 and to require notice of trial setting before the time for demanding a
jury.


 Tex. R. Civ. P. 245; Abbott, 863 S.W.2d at 141. "When compliance with Rule 216 is made
impossible by failure to give the notice required by Rule 245, the jury demand will be deemed
timely." Id.
            The Department's petition in this case was first filed August 15, 2002. The case was set on
the nonjury docket May 15, 2003. On May 14, 2003, the trial court appointed counsel for John. The
trial date was set for July 29, 2003, but was rescheduled for August 8, 2003. John's oral request for
a jury trial came after trial began. The record shows that no written request for a jury trial was ever
made to the trial court and that no request was made before the commencement of trial. 
            While we note that Texas caselaw, in its recognition that a right to a jury trial is one of "our
most precious rights," has been somewhat flexible in its application of the requirements for jury trial
requests and jury fees, we do not think an oral request after trial has already begun is within the range
of acceptable forms or timing. See Gen. Motors Corp. v. Gayle, 951 S.W.2d 469, 476–77 (Tex.
1997) (orig. proceeding). The trial court acted within its discretion when it overruled John's oral
request for a jury made after trial began. We overrule this point of error.
Applicable Law and Standard of Review
            A court may order involuntary termination only if the court finds clear and convincing
evidence supports two conclusions: (1) a parent has committed a predicate act or omission harmful
to the child, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001
(Vernon 2002). Any complaint that the evidence is legally or factually insufficient to support the
findings necessary for termination is analyzed by a heightened standard of appellate review. See In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).
            Here, John complains of both legal and factual sufficiency of the evidence supporting the trial
court's findings. When an appellant raises both legal and factual sufficiency issues, we review the
legal sufficiency point first to determine whether there is any probative evidence to support the trial
court's finding. See Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In reviewing
the legal sufficiency of the evidence, we view all the evidence in a light most favorable to the finding
to determine whether a trier of fact could reasonably have formed a firm belief or conviction about
the truth of the State's allegations. Tex. Fam. Code Ann. § 101.007 (Vernon 2002); J.F.C., 96
S.W.3d at 266.
Conditions or Surroundings which Endanger the Child
            Hunter contends the evidence is legally insufficient to establish by clear and convincing
evidence he "knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code
Ann. § 161.001(1)(D). Under this section, we look to see if the environment itself poses a danger
to the child's physical or emotional well-being. In re S.H.A., 728 S.W.2d 73, 84 (Tex. App.—Dallas
1987, writ ref'd n.r.e.).
            First, the Department fails to establish the environment posed a danger to the physical or
emotional well-being of T.H. The record does not demonstrate the danger posed by the the
environment at the motel in which T.H. had been living with her stepgrandmother. Johnson testified
Child Protective Services got involved in this case because it was called by the police when Mitchell
was arrested for outstanding warrants. The Department alleges the stepgrandmother was mentally
and emotionally unstable, stating she saw a psychiatrist for six years and sought to enter a program
offered by a local mental health association. Without more, the bare contention a caretaker saw a
psychiatrist or sought to take advantage of mental health services will not support a finding under
this subsection of the Texas Family Code. Further, Thurmond, the child's caseworker, testified that
T.H.'s stepgrandmother was making certain T.H. was "current on her medicals" and that she was able
to provide substantial background information on T.H.
            There is some evidence T.H. was hospitalized shortly before she was placed in her current
foster home in December 2002. This fact is the strongest evidence the Department presented that
would establish T.H. was in conditions or surroundings which posed a threat to her well-being. 
There is no other evidence such as records from her hospital stay or testimony from an attending
physician that would link the cause for hospitalization to the conditions in which T.H. was living. 
At any rate, the record demonstrates that T.H.'s hospitalization was a result of the pneumonia she
developed at her previous foster home in which the Department placed her from August 14, 2002
to December 18, 2002. John certainly did not knowingly place her in these conditions. 
            Second, even if clear and convincing evidence supported the trial court's finding that the
environment posed a danger to T.H.'s well-being, the Department failed to show that John knowingly
placed or allowed T.H. to remain in such an environment. The workers and CASA volunteer
associated with the case all concede they were never in contact with John. Specifically, John was
never told that the plans fell through with the placement of T.H. with the great aunt and uncle, the
Heptings. No one associated with the Department told John of the whereabouts of T.H. or the status
of her placement. The only person who did contact John was Amanda, who told him T.H. was living
with Amanda's mother. 
            The Department appears to argue that, even if T.H. would have been placed with John's
mother as he recommended, that living situation would have posed a danger to T.H. because John's
mother suffered from post-traumatic stress disorder from having been shot and because she was only
"partially employed." We are unconvinced by this argument because, quite simply, it never
happened. T.H. never lived with John's mother. Therefore, such a living environment cannot be a
basis for a finding that John knowingly placed T.H. in a dangerous environment.
            In summary, the record reveals that John complied with the requirements of the Department's
service plan and, beyond that, he was not regularly informed of the status of T.H.'s placement. There
is some evidence T.H. was hospitalized, although we have no medical records or doctor's testimony. 
Even viewing the evidence before us in the light most favorable to the termination order, however,
we find no evidence John knowingly placed or allowed T.H. to remain in the living conditions,
which the Department contends led to T.H.'s hospitalization. There is legally insufficient evidence
on which the trial court could have found John knowingly placed or allowed T.H. to remain in
conditions or surroundings which endangered her physical or emotional well-being.



Conduct which Endangers the Child
            Hunter also challenges the legal sufficiency of the evidence to support the trial court's finding
he engaged in conduct or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(E);
Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 534 (Tex. 1987).
            Here, our inquiry, unlike that under Section 161.001(1)(D), focuses on conduct of either the
parent or the persons with whom the parent has placed the children. See In re P.S., 766 S.W.2d 833,
835 (Tex. App.—Houston [1st Dist.] 1989, no writ). Subsection (D) permits termination based on
a single act or omission, while subsection (E) requires a "course of conduct." In re R.G., 61 S.W.3d
661, 667 (Tex. App.—Waco 2001, no pet.). While the term "endanger" means more than a threat
of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not
necessary that the conduct be directed at the child or that the child actually suffers injury. Boyd, 727
S.W.2d at 533. In our review, we look not only at evidence regarding the parent's active conduct,
but also evidence showing the parent's omissions or failures to act. P.S., 766 S.W.2d at 835.
            Here, the Department seems to argue that John's criminal history constitutes a sufficient
course of conduct that endangers T.H.'s physical or emotional well-being. The argument is that he
"left the child adrift in the world"; that he "exerted no control over who was around her"; and
"provided no environment." Mere imprisonment, standing alone, will not constitute engaging in
conduct which endangers the emotional or physical well-being of a child. Boyd, 727 S.W.2d at 533. 
Further, the commission of any intentional act which results in imprisonment, including violation
of probation, is not sufficient grounds, standing alone, for termination. Mayfield v. Smith, 608
S.W.2d 767, 771 (Tex. Civ. App.—Tyler 1980, no writ).
            The Legislature has provided that, in certain circumstances, a parent's rights may be
terminated for engaging in criminal conduct. Tex. Fam. Code Ann. § 161.001(Q) (conviction of
an offense and confinement and an inability to care for a child for two years from the date of the
filing of the petition). It appears this provision is inapplicable in this case.
            The Department also points to the mental instability of T.H.'s stepgrandmother, Mitchell, and
of John's mother, O'Bryant, whom he unsuccessfully recommended as caretaker for T.H. We find
very little convincing evidence their conduct posed a danger to T.H. While the stepgrandmother was
arrested during her care of T.H., her arrest, similar to John's incarceration, is insufficient to support
a finding under this subsection. See Boyd, 727 S.W.2d at 533. Again, O'Bryant's capacity for
parenting T.H. and her criminal history are irrelevant to this issue because all parties agree T.H. was
never in her care. 
            The law requires the Department to prove John knowingly placed T.H. with persons whose
conduct posed a danger to T.H.'s well-being. Here, even viewing the evidence in a light most
favorable to the finding, we conclude that a reasonable jury could not have formed a firm conviction
or belief that John knowingly did so. In fact, the Department's own evidence confirms John's
contention he did not know T.H. was living with her stepgrandmother in a motel room. There is
legally insufficient evidence to support the trial court's finding that John either engaged in conduct
or placed T.H. in the care of those whose conduct posed a danger to her well-being. 
Conclusion
            After reviewing all of the evidence in the light most favorable to the trial court's findings, we
conclude there is no clear and convincing evidence to support the grounds for termination. We
conclude that a reasonable trier of fact could not have formed a firm belief or conviction that such
findings were true. This determination is dispositive of this appeal and, therefore, we do not address
any other issue.
            We reverse and render judgment in favor of John Hunter.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          December 29, 2003
Date Decided:             March 9, 2004