NO. 07-06-0452-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 6, 2007

_____

IN THE INTEREST OF T.G., S.L.G., J.A., AND I.A., CHILDREN

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 17,410; HONORABLE KELLY G. MOORE, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Presenting four issues, Appellant, Lisa Marie Garza, brings this appeal to challenge the trial court's order terminating her parental rights to her children T.G., S.L.G., J.A., and I.A. By issues one and two, she contends the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law that she (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being as specified in § 161.001(1)(D) of the Texas Family Code, and (2) knowingly placed the children with a person, her mother,

Carmen Garza, who engaged in conduct that endangered their physical and emotional well-being as specified in § 161.001(1)(E) of the Texas Family Code. By issue three, she asserts the evidence is factually insufficient to support the trial court's findings of fact and conclusions of law that she engaged in conduct, namely committing criminal acts that resulted in her incarceration, that endangered her children's physical and emotional well-being as specified in § 161.001(1)(E) of the Texas Family Code. By her final issue, she maintains the evidence is factually insufficient to support the trial court's findings of fact and conclusions of law that termination of her parental rights is in the best interest of her children as specified in § 161.001(2) of the Texas Family Code.[1] Concluding that the evidence is sufficient to support the trial court's finding that Lisa engaged in conduct which endangered the physical or emotional well-being of her children, we affirm.

## Background Facts

When Lisa was fifteen, she had her first child, and by age twenty-three, she had five children with three different fathers. Her parental rights to four of her children, T.G., S.L.G., J.A., and I.A., were terminated by this proceeding. Lisa's fifth child, who is not involved in this case, resides with her father, Juan, in Houston. Lisa's mother, Carmen Garza, has ten children with Lisa's father and three other children. She did not raise her children after she and Lisa's father were divorced. According to Carmen, Lisa was a young school-age child

---

[1]All references herein are to the Texas Family Code Annotated (Vernon 2002 and Supp. 2006) unless otherwise specified.

2

at that time and went to live with her father and paternal grandmother until she had her first child. After that, she and Carmen lived together so Carmen could help take care of the child while Lisa was at work. Lisa resided in Dallas at the time.

On June 10, 2004, while Lisa was pregnant with her youngest child, she was arrested in Dallas for burglary of a vehicle and served approximately eight days in the county jail. Lisa received community supervision in exchange for a plea of guilty to that charge. Although chronologically unclear from the record, Lisa moved to Houston with one of the children's fathers, Juan, shortly after being granted community supervision. Her youngest daughter, I.A., was born there. Lisa and Juan worked for awhile, but when Juan was no longer able to find work, they returned to Dallas. They couldn't make it in Dallas and decided to move to Virginia to live with one of Juan's cousins and find work. Her children were picked up in Dallas by Carmen and taken to live in her home in Brownfield on a temporary basis until Lisa and Juan could provide a home. The daughter to which her parental rights were not terminated moved to Virginia with Lisa and Juan because she was not doing well at Carmen's house. Lisa and Juan both found employment, but in May 2005, Lisa returned to Brownfield to pick up her other children. She visited approximately one week, and on May 5, 2005, was arrested in Brownfield for violating the conditions of community supervision for her conviction in Dallas and was transferred there to serve her sentence. She was released on May 23rd and returned to Virginia to find a new job without picking up her children. According to Lisa, she did not want to relocate her children to Virginia at that time as she could not provide for them.

3

On August 12, 2005, Lisa learned that her children had been removed from Carmen's care by the Department due to neglectful supervision. Lisa's son, S.L.G., had been locked out of Carmen's house, and the incident had been reported to the police by a neighbor. S.L.G. was taken to the police department where Carmen later picked him up. Upon receiving the news, Lisa began her trip from Virginia to Brownfield. Along the way, she was arrested in Knoxville for speeding and not having a driver's license and served several days in jail before being released. She made it as far as Dallas before her car broke down. While in Dallas she once again found herself in a predicament with the law. According to Lisa, she was in the "wrong place at the wrong time," and was arrested for burglary of a habitation. She spent some time in jail and then, pursuant to a plea bargain, received ten years community supervision and a $2,500 fine. Without making arrangements with her community supervision officer, she returned to Virginia. Eventually, she and Juan had a falling out, and she left him and returned to Dallas. Lisa's daughter who had lived in Virginia with her and Juan moved to Houston with Juan.

During this stay in Dallas, Lisa lived with either an uncle or a friend. A warrant was issued for her arrest for violating the terms of community supervision stemming from the burglary of a habitation conviction. Additionally, she was arrested for theft and unlawfully carrying a weapon. She claimed she had received a ride with a friend and was unaware the friend was in possession of stolen property and that there was a weapon underneath her seat. On June 30, 2006, her community supervision was revoked, and she also pleaded guilty to the new charges. She was sentenced to five years confinement on the

4

revocation, one year on the theft conviction, and received time served for unlawfully carrying a weapon.

The Texas Department of Protective and Family Services filed a *Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship.* The Department alleged that termination of Lisa's parental rights to four of her children was in their best interest and further alleged that she:

> (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children;
>
> (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and
>
> (3) executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by chapter 161 of the Code.

Following a hearing on the Department's petition, the trial court found by clear and convincing evidence that termination of Lisa's parental rights was in the best interest of her children. The court also found that Lisa (1) knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being and (2) engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being.

## Termination of Parental Rights

The natural right existing between parents and their children is of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. *In the Interest of G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers existing between a parent and a child, except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. Thus, due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In the Interest of J.F.C., A.B.C., and M.B.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. § 101.007. *See also In the Interest of* G.M., 596 S.W.2d at 847; *In the Interest of Z.J.*, 153 S.W.3d 535, 539 (Tex.App.–Amarillo 2004, no pet.). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of the child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the children. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Though

the same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See id.*; *In re C.H.*, 89 S.W.3d at 28.

## Standard of Review

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d at 25. Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

Only one statutory ground is required to terminate parental rights under § 161.001. *See In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.). Therefore, we will affirm the termination order if the evidence is sufficient on any statutory ground upon which the trial court relied in terminating the parent/child relationship. *See id*.

7

## § 161.001(1)(E)

We first address Lisa's third issue by which she contends the evidence is factually insufficient to support the trial court's finding that she engaged in conduct, namely committing criminal acts, which endangered the children's physical or emotional well-being. Relying on *In re K.W.*, 138 S.W.3d 420, 432 (Tex.App.–Fort Worth 2004, pet. denied), and similar authorities, Lisa argues that incarceration, standing alone, is insufficient to justify termination of her parental rights. While we agree with the general rule, incarceration is a fact properly considered on the issue of endangerment. *See Tex. Dep't of Human Services v. Boyd*, 727 S.W.2d, 531, 533 (Tex. 1987). Termination under subsection (1)(E) is supportable if imprisonment shows a course of conduct which has the effect of endangering the physical or emotional well-being of a child. *Id.* at 533-34. *See also Mayfield v. Smith*, 608 S.W.2d 767, 769 (Tex.Civ.App.–Tyler 1980, no writ). Termination under subsection (1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex.App.–Fort Worth 2000, pet. denied).

"Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996), *citing Boyd*, 727 S.W.2d at 533. *See also In re T.N.*, 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2003, no pet.). When reviewing involuntary termination of parental

8

rights under § 161.001(1)(E), the court looks at the parent's conduct alone. *In re B.S.T.*, 977 S.W.2d 481, 484 (Tex.App.–Houston [14th Dist.] 1998, no pet.).

The record before us shows that Lisa's first arrest for burglary of a habitation occurred in Dallas in 2004, while she was pregnant with her youngest child. After a brief stay in jail, she was placed on community supervision. Cognizant of the conditions of community supervision, she nevertheless moved to Virginia without following procedure. Her conduct resulted in a violation of the conditions of community supervision for which she was arrested in May 2005. She served her sentence in Dallas away from her children. After her release she again returned to Virginia without her children.

In August 2005, upon learning that her children had been removed from her mother's care, she began her trip back to Brownfield. However, this time she was arrested in Knoxville for speeding and not having a driver's license. She served a short sentence there and then unfortunate circumstances found her back in Dallas instead of Brownfield. Her car had broken down and she was without transportation or a place to live. She found lodging with an uncle and sometimes with a friend. Her lack of transportation caused her to get a ride with a friend, who was stopped while she was a passenger. She testified that unbeknownst to her, her friend was in possession of stolen property and a weapon was found underneath her seat. This incident lead to yet another arrest of a more serious nature. Additionally, she again violated the conditions of community supervision by not reporting to her community supervision officer. Her excuse for not reporting was that she

9

had no place to stay in Dallas. As a result of these events, her community supervision was revoked and she pleaded guilty to the new offenses, resulting in confinement of five years for burglary of a habitation, one year for theft, and time served for unlawfully carrying a weapon.

During the termination hearing, evidence was presented that other relatives were unsuitable caregivers for Lisa's children. Additionally, Juan did not want to come forward and care for all of Lisa's children because he was not a citizen and feared deportation. Lisa's release date from prison was estimated to be March 2007; however, Lisa's past criminal conduct, including her repeated violations of the conditions of community supervision left her children in the Department's care for at least one year. A Department therapist who had counseled Lisa's children after their removal testified that during a brief visit with Lisa, the younger children did not know her well and the youngest one cried. The oldest child was the only one who seemed comfortable with Lisa. Between 2004 and the time of the hearing, Lisa spent very little time with her children. She was either incarcerated or living away from them in Dallas, Houston, or Virginia.

Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re R.W.*, 129 S.W.3d 732, 738-39 (Tex.App.–Fort Worth 2004, pet. denied). Additionally, knowing that one's parental rights are at stake and continuing criminal behavior that results in incarceration is conduct that constitutes endangerment. *See In re J.N.R.*, 982 S.W.2d 137, 142 (Tex.App.–Houston [1st

10

Dist.] 1998), *disapproved on other grounds*, 89 S.W.3d 17 (Tex. 2002). Lisa was given several opportunities after her initial arrest in 2004 to avoid further incarceration. She did not take advantage of the chances and instead, engaged in continuous criminal conduct that kept her apart from her children. *See Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ.App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.) (concluding that father endangered his children when he realized that repeated criminal conduct would revoke parole but nevertheless committed eight robberies). Based upon this evidence, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Lisa's conduct endangered the physical or emotional well-being of her children. Issue three is overruled.

Because only one ground is sufficient to support a termination order and we have concluded the evidence is factually sufficient to support the trial court's finding that Lisa engaged in conduct which endangered the physical or emotional well-being of her children, we need not address Lisa's first and second issues. However, we must still review Lisa's fourth issue by which she challenges the factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in her children's best interest.

**Best Interest of the Child**

To determine the best interest of the child, we apply a non-exhaustive list of considerations. *See Holley*, 544 S.W.2d at 371-72. They include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and

11

physical danger to the child now and in the future, the parental abilities of the individuals involved, the programs available to those individuals to promote the best interest of the child, the plans for the child by these individuals, the stability of the home, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and any excuse for the acts or omissions of the parent. *Id.*

A parent's criminal history is a factor in determining the best interest of the children. However, termination of parental rights should not become an additional punishment for imprisonment. *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex.App.–Houston [1st Dist.] 2002, pet. denied). Lisa argues that the nature of her crimes does not qualify them as endangerment and that her children were never present when she committed them. The law, however, provides that a parent's conscious "course of conduct" that results in imprisonment is a factor of endangerment. *See Boyd*, 727 S.W.2d at 533-34. Moreover, Lisa was pregnant with her youngest child when she was arrested in Dallas in 2004 and spent eight days in jail while pregnant. According to the time frame testified to in the record, Lisa was absent due to incarceration for a significant portion of the time her children spent in the Department's care. She also made little effort to avoid further incarceration when placed on community supervision.

Kim Shields, the Department therapist and case manager counseled Lisa's children following their removal from Carmen's home. The two older boys, eight and six at the time of trial, improved with therapy. They had been in a children's home for a year and

12

according to Ms. Shields, had both expressed an interest in being adopted. The two youngest daughters had been living in a foster home. According to Ms. Shields, children need one or two adults in a home in order to bond and form attachments. Considering that Lisa's parents and other relatives had all been ruled out as possible caregivers, Ms. Shields was of the opinion that the children needed closure and permanency and that termination was the solution.

At the time of trial, Lisa was twenty-three years old with five children. Testimony from a case worker indicated that the jail in Dallas had limited services to offer Lisa to comply with the Department's service plan. The record is conflicting on whether the Department did all it could to achieve reunification between Lisa and her children; however, the case worker testified that it was difficult to communicate with Lisa because she moved frequently and did not have a permanent address while she was in Dallas. The Department served Lisa with a service plan while she was in jail in Dallas. Lisa, however, denied receiving a service plan while in jail and instead claimed that she did not receive a plan until one was provided to her by her attorney.

Even assuming that Lisa was released from prison in March 2007, the Department case worker doubted she would be able to have her children placed with her. Lisa would need a home, employment, transportation, child care, and other necessities to provide for their immediate needs as well as their needs in the future. The children had already spent

at least one year in the Department's care and at the time of trial there was no estimate on how much longer the children would have to wait before Lisa could provide for them.

Lisa's parenting abilities are difficult to assess. According to the time frame testified to in the record, she was absent for a significant portion of her children's lives and made little effort to avoid incarceration even when placed on community supervision. Her life choices have left her unable to provide for her children. We conclude the trial court's finding that termination of Lisa's parental rights is in the best interest of her children is supported by factually sufficient evidence. Issue four is overruled.

Accordingly, the trial court's order terminating Lisa Garza's parental rights is affirmed.


Patrick A. Pirtle
Justice