NO. 07-06-0452-CV
 


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 6, 2007



______________________________




IN THE INTEREST OF T.G., S.L.G., J.A., AND I.A., CHILDREN



_________________________________



FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;



NO. 17,410; HONORABLE KELLY G. MOORE, JUDGE



_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Presenting four issues, Appellant, Lisa Marie Garza, brings this appeal to challenge
the trial court's order terminating her parental rights to her children T.G., S.L.G., J.A., and
I.A. By issues one and two, she contends the evidence is legally and factually insufficient
to support the trial court's findings of fact and conclusions of law that she (1) knowingly
placed or knowingly allowed the children to remain in conditions or surroundings that
endangered their physical or emotional well-being as specified in § 161.001(1)(D) of the
Texas Family Code, and (2) knowingly placed the children with a person, her mother,
Carmen Garza, who engaged in conduct that endangered their physical and emotional
well-being as specified in § 161.001(1)(E) of the Texas Family Code. By issue three, she
asserts the evidence is factually insufficient to support the trial court's findings of fact and
conclusions of law that she engaged in conduct, namely committing criminal acts that
resulted in her incarceration, that endangered her children's physical and emotional well-being as specified in § 161.001(1)(E) of the Texas Family Code. By her final issue, she
maintains the evidence is factually insufficient to support the trial court's findings of fact
and conclusions of law that termination of her parental rights is in the best interest of her
children as specified in § 161.001(2) of the Texas Family Code. (1) Concluding that the
evidence is sufficient to support the trial court's finding that Lisa engaged in conduct which
endangered the physical or emotional well-being of her children, we affirm. 

Background Facts


 When Lisa was fifteen, she had her first child, and by age twenty-three, she had five
children with three different fathers. Her parental rights to four of her children, T.G., S.L.G.,
J.A., and I.A., were terminated by this proceeding. Lisa's fifth child, who is not involved in
this case, resides with her father, Juan, in Houston. Lisa's mother, Carmen Garza, has ten
children with Lisa's father and three other children. She did not raise her children after she
and Lisa's father were divorced. According to Carmen, Lisa was a young school-age child
at that time and went to live with her father and paternal grandmother until she had her first
child. After that, she and Carmen lived together so Carmen could help take care of the
child while Lisa was at work. Lisa resided in Dallas at the time. 

 On June 10, 2004, while Lisa was pregnant with her youngest child, she was
arrested in Dallas for burglary of a vehicle and served approximately eight days in the
county jail. Lisa received community supervision in exchange for a plea of guilty to that
charge. Although chronologically unclear from the record, Lisa moved to Houston with one
of the children's fathers, Juan, shortly after being granted community supervision. Her
youngest daughter, I.A., was born there. Lisa and Juan worked for awhile, but when Juan
was no longer able to find work, they returned to Dallas. They couldn't make it in Dallas
and decided to move to Virginia to live with one of Juan's cousins and find work. Her
children were picked up in Dallas by Carmen and taken to live in her home in Brownfield
on a temporary basis until Lisa and Juan could provide a home. The daughter to which her
parental rights were not terminated moved to Virginia with Lisa and Juan because she was
not doing well at Carmen's house. Lisa and Juan both found employment, but in May
2005, Lisa returned to Brownfield to pick up her other children. She visited approximately
one week, and on May 5, 2005, was arrested in Brownfield for violating the conditions of
community supervision for her conviction in Dallas and was transferred there to serve her
sentence. She was released on May 23rd and returned to Virginia to find a new job without
picking up her children. According to Lisa, she did not want to relocate her children to
Virginia at that time as she could not provide for them. 

 On August 12, 2005, Lisa learned that her children had been removed from
Carmen's care by the Department due to neglectful supervision. Lisa's son, S.L.G., had
been locked out of Carmen's house, and the incident had been reported to the police by
a neighbor. S.L.G. was taken to the police department where Carmen later picked him up. 
Upon receiving the news, Lisa began her trip from Virginia to Brownfield. Along the way,
she was arrested in Knoxville for speeding and not having a driver's license and served
several days in jail before being released. She made it as far as Dallas before her car
broke down. While in Dallas she once again found herself in a predicament with the law. 
According to Lisa, she was in the "wrong place at the wrong time," and was arrested for
burglary of a habitation. She spent some time in jail and then, pursuant to a plea bargain,
received ten years community supervision and a $2,500 fine. Without making
arrangements with her community supervision officer, she returned to Virginia. Eventually,
she and Juan had a falling out, and she left him and returned to Dallas. Lisa's daughter
who had lived in Virginia with her and Juan moved to Houston with Juan.

 During this stay in Dallas, Lisa lived with either an uncle or a friend. A warrant was
issued for her arrest for violating the terms of community supervision stemming from the
burglary of a habitation conviction. Additionally, she was arrested for theft and unlawfully
carrying a weapon. She claimed she had received a ride with a friend and was unaware
the friend was in possession of stolen property and that there was a weapon underneath
her seat. On June 30, 2006, her community supervision was revoked, and she also
pleaded guilty to the new charges. She was sentenced to five years confinement on the
revocation, one year on the theft conviction, and received time served for unlawfully
carrying a weapon. 

 The Texas Department of Protective and Family Services filed a Petition for
Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The Department alleged that termination of Lisa's parental rights to
four of her children was in their best interest and further alleged that she:

 (1) knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endangered the physical or emotional well-being of the children;

 (2) engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangered the physical or emotional well-being
of the children; and

 (3) executed an unrevoked or irrevocable affidavit of relinquishment of
parental rights as provided by chapter 161 of the Code.


 Following a hearing on the Department's petition, the trial court found by clear and
convincing evidence that termination of Lisa's parental rights was in the best interest of her
children. The court also found that Lisa (1) knowingly placed or knowingly allowed her
children to remain in conditions or surroundings which endangered their physical or
emotional well-being and (2) engaged in conduct or knowingly placed her children with
persons who engaged in conduct which endangered their physical or emotional well-being. 




Termination of Parental Rights

 The natural right existing between parents and their children is of constitutional
dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination
proceedings must be strictly scrutinized. In the Interest of G.M., 596 S.W.2d 846, 846
(Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time
that natural right as well as all legal rights, privileges, duties, and powers existing between
a parent and a child, except for the child's right to inherit. Holick, 685 S.W.2d at 20. Thus,
due process requires application of the clear and convincing standard of proof in cases
involving involuntary termination of parental rights. In the Interest of J.F.C., A.B.C., and
M.B.C., 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure
or degree of proof which will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established. § 101.007. See also
In the Interest of G.M., 596 S.W.2d at 847; In the Interest of Z.J., 153 S.W.3d 535, 539
(Tex.App.-Amarillo 2004, no pet.). Parental rights, however, are not absolute, and it is
essential that the emotional and physical interests of the child not be sacrificed merely to
preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 

 Section 161.001 of the Code permits a court to order termination of parental rights
if the petitioner establishes one or more acts or omissions enumerated under subsection
(1) of the statute and also proves that termination of the parent-child relationship is in the
best interest of the children. Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Though
the same evidence may be probative of both issues, both elements must be established
and proof of one element does not relieve the petitioner of the burden of proving the other. 
See id.; In re C.H., 89 S.W.3d at 28. 

Standard of Review


 The standard for reviewing the factual sufficiency of termination findings is whether
the evidence is such that a reasonable factfinder could form a firm belief or conviction
about the truth of the Department's allegations. In re C.H., 89 S.W.3d at 25. Under that
standard, we consider whether the disputed evidence is such that a reasonable factfinder
could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id. 

 Only one statutory ground is required to terminate parental rights under § 161.001. 
See In re S.F., 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.). Therefore, we
will affirm the termination order if the evidence is sufficient on any statutory ground upon
which the trial court relied in terminating the parent/child relationship. See id.




§ 161.001(1)(E)


 We first address Lisa's third issue by which she contends the evidence is factually
insufficient to support the trial court's finding that she engaged in conduct, namely
committing criminal acts, which endangered the children's physical or emotional well-being. 
Relying on In re K.W., 138 S.W.3d 420, 432 (Tex.App.-Fort Worth 2004, pet. denied), and
similar authorities, Lisa argues that incarceration, standing alone, is insufficient to justify
termination of her parental rights. While we agree with the general rule, incarceration is
a fact properly considered on the issue of endangerment. See Tex. Dep't of Human
Services v. Boyd, 727 S.W.2d, 531, 533 (Tex. 1987). Termination under subsection (1)(E)
is supportable if imprisonment shows a course of conduct which has the effect of
endangering the physical or emotional well-being of a child. Id. at 533-34. See also
Mayfield v. Smith, 608 S.W.2d 767, 769 (Tex.Civ.App.-Tyler 1980, no writ). Termination
under subsection (1)(E) must be based on more than a single act or omission; a voluntary,
deliberate, and conscious "course of conduct" by the parent is required. In re D.T., 34
S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied). 

 "Endanger" means more than a threat of metaphysical injury or the possible ill
effects of a less-than-ideal family environment. In re M.C., 917 S.W.2d 268, 269 (Tex.
1996), citing Boyd, 727 S.W.2d at 533. See also In re T.N., 180 S.W.3d 376, 383
(Tex.App.-Amarillo 2003, no pet.). When reviewing involuntary termination of parental
rights under § 161.001(1)(E), the court looks at the parent's conduct alone. In re B.S.T.,
977 S.W.2d 481, 484 (Tex.App.-Houston [14th Dist.] 1998, no pet.). 

 The record before us shows that Lisa's first arrest for burglary of a habitation
occurred in Dallas in 2004, while she was pregnant with her youngest child. After a brief
stay in jail, she was placed on community supervision. Cognizant of the conditions of
community supervision, she nevertheless moved to Virginia without following procedure. 
Her conduct resulted in a violation of the conditions of community supervision for which she
was arrested in May 2005. She served her sentence in Dallas away from her children. 
After her release she again returned to Virginia without her children. 

 In August 2005, upon learning that her children had been removed from her
mother's care, she began her trip back to Brownfield. However, this time she was arrested
in Knoxville for speeding and not having a driver's license. She served a short sentence
there and then unfortunate circumstances found her back in Dallas instead of Brownfield. 
Her car had broken down and she was without transportation or a place to live. She found
lodging with an uncle and sometimes with a friend. Her lack of transportation caused her
to get a ride with a friend, who was stopped while she was a passenger. She testified that
unbeknownst to her, her friend was in possession of stolen property and a weapon was
found underneath her seat. This incident lead to yet another arrest of a more serious
nature. Additionally, she again violated the conditions of community supervision by not
reporting to her community supervision officer. Her excuse for not reporting was that she
had no place to stay in Dallas. As a result of these events, her community supervision was
revoked and she pleaded guilty to the new offenses, resulting in confinement of five years
for burglary of a habitation, one year for theft, and time served for unlawfully carrying a
weapon.

 During the termination hearing, evidence was presented that other relatives were
unsuitable caregivers for Lisa's children. Additionally, Juan did not want to come forward
and care for all of Lisa's children because he was not a citizen and feared deportation.
Lisa's release date from prison was estimated to be March 2007; however, Lisa's past
criminal conduct, including her repeated violations of the conditions of community
supervision left her children in the Department's care for at least one year. A Department
therapist who had counseled Lisa's children after their removal testified that during a brief
visit with Lisa, the younger children did not know her well and the youngest one cried. The
oldest child was the only one who seemed comfortable with Lisa. Between 2004 and the
time of the hearing, Lisa spent very little time with her children. She was either
incarcerated or living away from them in Dallas, Houston, or Virginia. 

 Conduct that subjects a child to a life of uncertainty and instability endangers the
physical and emotional well-being of a child. In re R.W., 129 S.W.3d 732, 738-39
(Tex.App.-Fort Worth 2004, pet. denied). Additionally, knowing that one's parental rights
are at stake and continuing criminal behavior that results in incarceration is conduct that
constitutes endangerment. See In re J.N.R., 982 S.W.2d 137, 142 (Tex.App.-Houston [1st
Dist.] 1998), disapproved on other grounds, 89 S.W.3d 17 (Tex. 2002). Lisa was given
several opportunities after her initial arrest in 2004 to avoid further incarceration. She did
not take advantage of the chances and instead, engaged in continuous criminal conduct
that kept her apart from her children. See Allred v. Harris County Child Welfare Unit, 615
S.W.2d 803, 806 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.) (concluding that
father endangered his children when he realized that repeated criminal conduct would
revoke parole but nevertheless committed eight robberies). Based upon this evidence, we
conclude that a reasonable factfinder could have formed a firm belief or conviction that
Lisa's conduct endangered the physical or emotional well-being of her children. Issue
three is overruled.

 Because only one ground is sufficient to support a termination order and we have
concluded the evidence is factually sufficient to support the trial court's finding that Lisa
engaged in conduct which endangered the physical or emotional well-being of her children,
we need not address Lisa's first and second issues. However, we must still review Lisa's
fourth issue by which she challenges the factual sufficiency of the evidence to support the
trial court's finding that termination of her parental rights was in her children's best interest. 

Best Interest of the Child


 To determine the best interest of the child, we apply a non-exhaustive list of
considerations. See Holley, 544 S.W.2d at 371-72. They include the desires of the child,
the emotional and physical needs of the child now and in the future, the emotional and
physical danger to the child now and in the future, the parental abilities of the individuals
involved, the programs available to those individuals to promote the best interest of the
child, the plans for the child by these individuals, the stability of the home, the acts or
omissions of the parent which may indicate that the existing parent-child relationship is not
proper, and any excuse for the acts or omissions of the parent. Id.

 A parent's criminal history is a factor in determining the best interest of the children. 
However, termination of parental rights should not become an additional punishment for
imprisonment. In re C.T.E., 95 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2002, pet.
denied). Lisa argues that the nature of her crimes does not qualify them as endangerment
and that her children were never present when she committed them. The law, however,
provides that a parent's conscious "course of conduct" that results in imprisonment is a
factor of endangerment. See Boyd, 727 S.W.2d at 533-34. Moreover, Lisa was pregnant
with her youngest child when she was arrested in Dallas in 2004 and spent eight days in
jail while pregnant. According to the time frame testified to in the record, Lisa was absent
due to incarceration for a significant portion of the time her children spent in the
Department's care. She also made little effort to avoid further incarceration when placed
on community supervision. 

 Kim Shields, the Department therapist and case manager counseled Lisa's children
following their removal from Carmen's home. The two older boys, eight and six at the time
of trial, improved with therapy. They had been in a children's home for a year and
according to Ms. Shields, had both expressed an interest in being adopted. The two
youngest daughters had been living in a foster home. According to Ms. Shields, children
need one or two adults in a home in order to bond and form attachments. Considering that
Lisa's parents and other relatives had all been ruled out as possible caregivers, Ms.
Shields was of the opinion that the children needed closure and permanency and that
termination was the solution. 

 At the time of trial, Lisa was twenty-three years old with five children. Testimony
from a case worker indicated that the jail in Dallas had limited services to offer Lisa to
comply with the Department's service plan. The record is conflicting on whether the
Department did all it could to achieve reunification between Lisa and her children; however,
the case worker testified that it was difficult to communicate with Lisa because she moved
frequently and did not have a permanent address while she was in Dallas. The
Department served Lisa with a service plan while she was in jail in Dallas. Lisa, however,
denied receiving a service plan while in jail and instead claimed that she did not receive
a plan until one was provided to her by her attorney. 

 Even assuming that Lisa was released from prison in March 2007, the Department
case worker doubted she would be able to have her children placed with her. Lisa would
need a home, employment, transportation, child care, and other necessities to provide for
their immediate needs as well as their needs in the future. The children had already spent
at least one year in the Department's care and at the time of trial there was no estimate on
how much longer the children would have to wait before Lisa could provide for them.

 Lisa's parenting abilities are difficult to assess. According to the time frame testified
to in the record, she was absent for a significant portion of her children's lives and made
little effort to avoid incarceration even when placed on community supervision. Her life
choices have left her unable to provide for her children. We conclude the trial court's
finding that termination of Lisa's parental rights is in the best interest of her children is
supported by factually sufficient evidence. Issue four is overruled.

 Accordingly, the trial court's order terminating Lisa Garza's parental rights is
affirmed.


 Patrick A. Pirtle

 Justice

 
1. All references herein are to the Texas Family Code Annotated (Vernon 2002 and
Supp. 2006) unless otherwise specified.